## W. U. MASTERS ET AL. v. GEORGE LAUDER ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1889—Decided January 1, 1890.

1. Where the capital of a proposed limited partnership association has been paid into the hands of its treasurer, as required by the terms of its statement, the withdrawal of a small sum from the bank where deposited, prior to final organization, will not render the organization invalid.
2. Such an association having once been organized, and its capital so paid in, its members cannot be held liable as general partners, because a portion of the capital is subsequently applied in carrying out a bad bargain in the purchase of property connected with the partnership business.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 206 October Term 1889, Sup. Ct.; court below, No. 181 September Term 1887, C. P. No. 1.

On July 1, 1887, W. U. Masters and Edward C. Pope, late partners as Masters & Co., brought assumpsit against George Lauder, F. H. Oliphant and S. D. Oliphant, doing business as the Wampum Iron Company, Limited. Issue.

At the trial on January 8, 1889, it appeared that the defendants on January 25, 1881, entered into articles for the purpose of forming a limited partnership association, under the act of June 2, 1874, P. L. 271. The capital was to be $20,000, payable in money; three fourths at the execution of the statement, and one fourth, four months from the date of execution.

This capital was divided into 200 shares; of which Lauder subscribed for 100, F. H. Oliphant for 60, and S. D. Oliphant for 40. At the date of the execution of the statement there was on deposit in bank to the credit of the company $14,900. S. D. Oliphant testified that $100 had been drawn out for the use of the company. Shortly after the recording of the statement, the company paid out from the capital the sum of $12,000 on account of the purchase money of certain property the title to which at first was not taken in the name of the association, and which was used in the business of the company. The plaintiffs adduced testimony to the effect that certain personal property had been bought for a lump sum, $5,000, and that it was not worth more than $3,600.

The court, STOWE, P. J., charged the jury in part as follows:

Now, the first question which arises is, whether the parties have paid in the amount represented in the statement as paid in. Under a decision of the Supreme Court, when parties represent that they have paid in a certain amount of money, that must be a fact. Here it is represented that they paid in $15,000, and that is the first question that comes before us. Did they pay in $15,000?

Undoubtedly, under the testimony, $15,000 was paid in by these three parties, and the Supreme Court say that it does not make any difference who paid it in, whether paid in proportion to their subscriptions or not, so that it was paid in: [See Lauder v. Logan, 123 Pa. 34.] [Now, $15,000 obviously was paid in; but before the execution of the agreement, or at all events before it was recorded, some portion of it was withdrawn from the bank. It does not necessarily follow that it was not in the pocket of the treasurer, but that is perhaps a matter of inference for the jury. If there was nothing else in the case, we do not think that would be an important matter; because, we instruct you, if the money was actually paid in, with the honest intention of creating this partnership, and the parties afterwards, as appears, executed a deed in due form and had it properly put upon record, carrying the firm into effect, it makes no difference that a small part of the money may have been withdrawn before the signing of the deed, if it was used for the purposes of the contemplated firm and in good faith.] [4] That may be giving this

act somewhat of a broader signification than its terms would warrant. It does not say anything about that; but, [it seems to me that if a firm have $15,000 or $20,000 (but it might be half a million), paid in by all the parties in interest, and some one of them, appointed treasurer, should draw out $1.50 to buy a blank book for a subscription list, half an hour or an hour before the execution of the papers, to therefore make all the parties interested liable as general partners is putting a very close construction on the act.] [5] It would amount to that, however, if we would tell you that if anything had been withdrawn previous to the execution of this paper, under any circumstances, it would operate as a forfeiture of their rights under this act of assembly. That we do not think would be a fair construction of the act. Of course we can only state to you what we think. Our superiors may think differently, and if they do, we always submit with the best grace we can to their instructions.

That matter out of the way, then, assuming that the company was properly organized, we have another matter upon which much has been said and much testimony offered; and that is the claim that the amount of $5,000, which was to be paid in afterwards, was never paid in; that the property was purchased in the individual names of the partners, and while it is true that the use of it went into the firm, yet there was no formal conveyance of the property. The personal property, it is said, covered more than this $5,000, which indicates that it was at least valuable to that amount. The parties themselves testified, and it is not contradicted, that they considered it nominally worth a great deal more, some $12,000. The firm got the benefit of that; but it is alleged that, so far as the realty was concerned, it was in the names of these individuals, or as partners not described as members of this limited firm; that that was a fraud, in violation of this act of assembly and that by it they forfeited their rights. Now, a case might arise where such a state of facts would be a fraud. The evidence tends to show, however, that at the time this paper was executed, the title was taken and the mortgage given in the names of these gentlemen as individuals, because the vendor, the party who sold the property to them, would not take their obligations as limited partners. I think he was very sensible in that, because the limited partnership liability was probably not worth very much; it certainly was

not so good as the individual liability. To secure this mort-
gage, which was held by a third party, they took the deed in
their own names and gave obligations in their own names, but,
according to the testimony, and there is no dispute about that,
they always treated this as partnership property, except in the
one case where Mr. Lauder sold a right-of-way to a railroad
company. It appears, however, that he appropriated the pro-
ceeds to this bank that held the mortgage upon the property,
which was a proper and legitimate disposition of the money,
showing that he was not using it for his own personal benefit,
and it left the title just where it was before, for the benefit of
this company. [Then I say that, as there is no dispute about
it, under the testimony, if you believe that the property was in-
tended and held all this time for the benefit of the company or
partnership, although not formally conveyed to them until after
this suit was brought, still it is not such an act or state of affairs
as would render these parties liable as general partners, but
would be a sufficient compliance with the act of assembly to
protect them so far as this action is concerned.] [12]

The jury returned a verdict in favor of the defendants. Judg-
ment having been entered, the plaintiffs took this writ, assign-
ing as error, inter alia :

4, 5, 12. The portions of the charge embraced in [ ] [4] [5] [12]

*Mr. S. W. Cunningham* and *Mr. S. A. McClung*, for the
appellants.

Counsel cited : Hill v. Stetler, 127 Pa. 145 ; Sheble v. Strong,
128 Pa. 315 ; Haddock v. Kiernan, 109 Pa. 372 ; Maloney v.
Bruce, 94 Pa. 249 ; Pears v. Barnes, 1 Cent. R. 569 ; Hite N.
Gas Co.'s App., 118 Pa. 436 ; Coffin's App., 106 Pa. 280 ; An-
drews v. Schott, 10 Pa. 47 ; Eliot v. Himrod, 108 Pa. 569 ;
Keystone B. & S. Co. v. Schoellkopf, 11 W. N. 132.

*Mr. George Shiras, Jr.*, for the appellees.

PER CURIAM :

The defendants were members of a limited partnership asso-
ciation. The plaintiffs were creditors of said association, and
brought this suit in the court below for the purpose of holding
them liable as general partners.

The grounds for this contention were certainly very slight. The association appears to have been organized according to law, and the capital paid in. At any rate, the court submitted this question to the jury, under proper instructions, and they have so found. There was no doubt, under the evidence, that the whole of the $15,000 was paid in in cash, but it was alleged that of this sum $100 had been withdrawn from the bank prior to the completed organization. We do not see that it would have impaired the legality of the organization, had the whole amount been withdrawn from the bank, unless it had also been withdrawn from the association. It need not have been deposited in bank at all. It was a sufficient compliance with the law if it had been paid to the treasurer in good faith.

A further effort was made to show a withdrawal of the capital by the purchase of certain real and personal estate; the allegation being that, as to the personalty, it had been bought at a lumping sum, and at a price in excess of its value. But I do not see how the validity of an organization of this character, if legal at its formation, can be affected by the making of a bad bargain in the purchase of property connected with its business. All this, however, was properly submitted to the jury. There were some other matters discussed, but they are not important, and do not require comment.

Judgment affirmed.